# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PETER ODONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-00685-TWP-DML |
| | ) | |
| BRIGHTPOINT NORTH AMERICA, L.P. | ) | |
| d/b/a INGRAM MICRO MOBILITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the Motion for Summary Judgment (Filing No. 68) filed

by Defendant Brightpoint North America, L.P. d/b/a Ingram Micro Mobility ("Ingram"). Plaintiff

Peter Odongo ("Odongo"), *pro se*, filed this action asserting hostile work environment,

discrimination, and retaliation based on race (Black) and national origin (Ugandan). The Amended

Complaint also contains sections titled "Invasion of Privacy" and "Fraud". Ingram asserts that

Odongo's claims fail as a matter of law. For the reasons stated below, the Motion for Summary

Judgment is **granted**.

## I.     BACKGROUND

The following facts are not necessarily true, but as required by Federal Rule of Civil

Procedure 56, the facts are presented in the light most favorable to Odongo as the non-moving

party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 255 (1986).

Brightpoint North America, L.P. does business as Ingram Micro Mobility. (Filing No. 70-

1 at 1.)  Ingram contracts with Elwood Staffing Services ("Elwood") for staffing solutions for

temporary workers. (Filing No. 70-1 at 2.)  Elwood subcontracts with CoWorx Staffing Solutions

("CoWorx") for temporary workers.  (Filing No. 70-2 at 7.)  Odongo was employed by CoWorx and received his paycheck from CoWorx.  (Filing No. 70-2 at 8.)

On September 15, 2014, Odongo was assigned to work at Ingram.  (Filing No. 70-2 at 68–69.)  He participated in an orientation at Elwood at which time he was informed that if he experienced any harassment, he should report it to the supervisors and managers at Ingram or to the Elwood agents at Ingram.  (Filing No. 70-2 at 8, 9, 18.)  Ingram has policies prohibiting discrimination, harassment, and retaliation, and encouraging mutual respect.  (Filing No. 70-1 at 2.)

Odongo first worked on the assembly line at Ingram doing packaging.  (Filing No. 70-2 at 19.)  His supervisor was Marie Armstrong ("Armstrong"), an African-American.  (Filing No. 70-2 at 19.)  Thirty-five workers were in the assembly department; one-third of them were African immigrants and the rest were Asian.  (Filing No. 70-2 at 19-20.)  In late 2015, Odongo was moved to the outbound department; the majority of the workers in that department were also Black or Asian.  (Filing No. 70-2 at 20; Filing No. 70-3 at 2.)  Odongo's supervisor in the outbound department was Carl Britt ("Britt").  (Filing No. 70-3 at 1.)

On May 26, 2015, Odongo was working on the automation line when a supervisor instructed him to take a break; Odongo refused to take a break.  (Filing No. 70-3 at 15-16.)  Odongo explained he was "dealing with some issues" and mad that day because of being "harassed and laughed at in the workplace" and he admitted he was insubordinate and deserved disciplinary action.  (Filing No. 70-3 at 16.)  However, he does not believe his actions warranted termination.  *Id*.  Odongo also admitted to exchanging "words" with the supervisor.  (Filing No. 70-3 at 16.)  That supervisor summoned Armstrong for assistance, but Odongo also refused to listen to her.  (Filing No. 70-3 at 17.)  Armstrong then summoned Britt who escorted Odongo out of the building

and asked for his security badge. (Filing No. 70-3 at 17.)

The next day, on May 27, 2015, CoWorx advised Odongo that his job assignment at Ingram was terminated. (Filing No. 70-2.) According to Ingram's Senior Manager–Field HR at the facility where Odongo worked, Bryan McGinnis, Odongo's assignment at Ingram was terminated as a result of the incident the day before in which Odongo was insubordinate and refused to take a break when instructed to do so. (Filing No. 70-4 at 1.)

Odongo alleges he was subjected to ten forms of harassment while he worked at Ingram: (1) offensive jokes, (2) surveillance, (3) staring, (4) stalking, (5) noise from dropping pellets, (6) a dirty workspace left from the prior shift, (7) a broken scan gun, (8) the turning on and off of lights, (9) poor water, and (10) noxious fumes. (Filing No. 70-3 at 3-4, 18, 19.) Although Odongo claims the jokes were offensive, he testified that he could not hear or understand any of them except for one which was, "All right. All right. All right. You're going to learn today." (Filing No. 70-3 at 5-6.) Regarding the surveillance, Odongo said it was "from hidden cameras—or not hidden cameras. I'm not sure." (Filing No. 70-3 at 7.) Odongo also alleged that other employees stalked him by going to the restroom at the same time he did; however, he could not name a single employee who did so. (Filing No. 70-3 at 12.) He explained that "all of a sudden everyone suddenly wants to go use the restroom." (*Id.*)

As for the excessive noise, Odongo stated that the forklift drivers made beeping or honking noises while driving around the warehouse when he was at his workstation. (Filing No. 70-3 8.) He acknowledged that this happened to other employees, too, "[t]hough not as excessively compared to [him]." (*Id.*) In addition, pallets were dropped "mostly" "far away," causing alarms to go off because an item was stacked in error. (Filing No. 70-3 at 9.) Moreover, employees who worked the shift before Odongo's shift, would not clean the workstation after their shift, leaving

the workstation messy for him. (Filing No. 70-3 at 10-11.) Odongo's scan gun ran out of WiFi frequently and would not scan properly, leaving him unable to perform his work. (Filing No. 70-3 at 11-12.) And at times, the lights in the warehouse would go off. (Filing No. 70-3 at 12.) When Odongo used the drinking fountain, the stream of water would lower when he was trying to take a drink. (Filing No. 70-3 at 15.) On one occasion, he drank from the fountain and his body started to overheat and he experienced pain. (Filing No. 70-3 at 18.) Finally, Odongo said that he was subjected to noxious fumes, but he did not complain to anyone in management at Ingram about the water or fumes. (Filing No. 70-3 at 19.)

The only time Odongo complained about the harassment was to Armstrong in December 2014. (Filing No. 70-3 at 14.) He testified, "I reported the one incident where the employee was using his tape machine to, like, to make noise with me, and looking at me and laughing while he imitates me . . . . [t]hen the other harassment was staring . . . . [and] the stalking activities." (Filing No. 70-3 at 13.) After complaining, in late 2014, Odongo was moved from the assembly department to the outbound department. (Filing No. 70-2 at 20.) The outbound department was "pretty far" away from the assembly department and had a different group of employees. (Filing No. 70-3 at 1.) Finally, Odongo's only complaint to anyone during his employment at Ingram was to Armstrong; he did not complain to anyone else at Ingram about harassment or discrimination. (Filing No. 70-3 at 14.)

Odongo's Amended Complaint is the operative complaint. (Filing No. 34.) It alleges claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. In particular, the Amended Complaint alleges racial and national origin discrimination, retaliation, and a hostile work environment. It also attempts to assert claims under state law for invasion of privacy and fraud. Ingram filed its Motion for Summary Judgment, seeking summary judgment on all of

Odongo's claims.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court views "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  In addition, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder").  "Instead, when ruling on a summary judgment motion, a

court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Wanko v. Bd. of Trs. of Ind. Univ.*, No. 1:16-cv-02789-TWP-DML, 2018 WL 3631579, at *2 (S.D. Ind. July 30, 2018), *appeal filed*, No. 18-2767 (7th Cir. Aug. 15, 2018).

"A 'material fact' is one identified by the substantive law as affecting the outcome of the suit." *Bunn v. Khoury Enterps., Inc.,* 753 F.3d 676, 681–82 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

## III.   DISCUSSION

Ingram moves for summary judgment on all of Odongo's claims.  Ingram argues that: (1) it was not Odongo's employer; (2) Odongo cannot show that he was subjected to harassment based on his race or national origin or that the alleged harassment was sufficiently severe or pervasive; (3) Odongo cannot establish a *prima facie* case of discrimination or retaliation, and even if he could, he cannot show that its stated reason for terminating his employment was pretext; and (4) it should be granted summary judgment on the invasion of privacy and fraud claims.  The Court will address each in turn.

## A.       Employer Status

As an initial mater, Ingram argues that it cannot be held liable for Odongo's Title VII and Section 1981 claims because Odongo was employed by CoWorx and/or Elwood, not Ingram. Putting aside the fact that Section 1981 is not limited to employers and prohibits any person from discriminating in a contractual relationship, (*Lopez v. Union Tank Car Co.*, 8 F. Supp. 2d 832, 837 (N.D. Ind. 1998)), Ingram's position is unavailing.  While only an "employer" may be held liable under Title VII, (*Robinson v. Sappington*, 351 F.3d 317, 332 n.9 (7th Cir. 2003)), for Title VII purposes, a plaintiff can have more than one employer.  *Frey v. Coleman*, No. 17-2267, --- F.3d -

---, 2018 WL 4327310, at *3 (7th Cir. Sept. 11, 2018); *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 895 (7th Cir. 2015). The question is whether the alleged employer "exerted significant control over the employee." *Whitaker v. Milwaukee Cty., Wis.,* 772 F.3d 802, 810 (7th Cir. 2014) (citing *G. Heileman Brewing Co. v. NLRB,* 879 F.2d 1526, 1530 (7th Cir. 1989) (internal quotations omitted)). Courts have identified several factors to be considered in determining whether an entity is a joint employer:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Frey*, 2018 WL 4327310, at *3 (quoting *Knight v, United Farm Bureau Mut. Ins. Co.,* 950 F.2d 377, 378–79 (7th Cir. 1991)). "[T]he employer's right to control is the most important" factor and is to be given "the most weight." *Id.* (quoting *Knight*, 950 F.2d at 378).

Thus, the facts that Odongo was employed directly by and received his paychecks from CoWorx are not dispositive. "An employee working for a temporary employment agency may be considered an employee of the entity to which he is assigned for purposes of Title VII where that [entity] exerts a significant amount of control over the individual." *Grady v. Affiliated Comp. Servs. ACS*, No. 1:13-cv-00342-TWP-MJD, 2015 WL 1011355, at *4–5 (S.D. Ind. 2015) (citing *Piano v. Ameritech/SBC,* No. 02 C 3237, 2003 WL 260337, at *5 (N.D. Ill. Feb. 5, 2003)). Ingram's facts fail to address all of the factors considered in determining whether an entity is an employer, including the most important factor: who had the right to control and supervise Odongo. Therefore, Ingram has not shown the absence of a question of fact as to whether it could be considered Odongo's employer for purposes of Title VII.

**B.     Legal Principles for Employment Discrimination and Retaliation Claims**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from acting in retaliation against employees who oppose any practice made unlawful under Title VII. 42 U.S.C. § 2000e-3(a). Section 1981 also prohibits race and national origin discrimination and retaliation. 42 U.S.C. § 1981(a); *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014)). Courts apply the same standards to analyze claims under Title VII and § 1981. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015).

A plaintiff alleging discrimination may prove his or her claim using either the direct method or indirect method of proof. *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). Under the direct method, a plaintiff proves his case "by pointing to evidence directly showing that [his] employer subjected [him] to an adverse employment action on an impermissible discriminatory basis." *Id.*

Under the indirect, burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must first be able to establish a *prima facie* case of discrimination based on, as alleged in this case, race or national origin. *Id.* at 802. A plaintiff establishes a *prima facie* case of discrimination by presenting evidence that would allow a reasonable jury to find on each claim that: (1) he is a member of a protected class; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated non-protected class member. *See Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). If the plaintiff can prove a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If the

employer articulates such a reason, the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the employer's stated reason was pretext. *Id.* at 804.

Similarly, a plaintiff may establish a *prima facie* case of retaliation using either the direct method or indirect method of proof. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). Under the direct method, a plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal connection exists between the two. *Id.* Under the indirect, burden-shifting method, a plaintiff must first establish a *prima facie* case by showing that: (1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered a materially adverse action; and (4) he was treated less favorably than a similarly situated employee who did not engage in the statutorily protected activity. *Harper*, 687 F.3d at 309. As with a discrimination claim, if a plaintiff can prove a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. And if the employer offers such a reason, the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the reason was pretext. *Id.* at 804.

Regardless of whether a plaintiff uses the direct method of proof, indirect method, or both methods, the legal standard is the same, namely, "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterps., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). *Ortiz* "did not alter *McDonnell Douglas* or displace the indirect method of establishing a prima facie case of discrimination." *Golla v. Office of Chief Judge of Cook Cty., Ill.*, 875 F.3d 404, 407 (7th Cir. 2017). Rather, "the indirect method remains 'a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual

patterns found in discrimination cases." *Id.* (quoting *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence." *Ortiz*, 834 F.3d at 765. "Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" *Id.*

## C.  Odongo's Response

Odongo filed a response to the summary judgment motion that raises several issues. First, he asserts that Ingram did not swear under oath that he "never made complaints to its management" or that his supervisor Britt did not fail "to discipline insubordinate employees [who did] the same [as Odongo], refusing to work as told." (Filing No. 81 at 2.) But it is Odongo, not Ingram, who has to come forward with evidence to support his claims. *Hemsworth*, 476 F.3d at 490.

Furthermore, the Seventh Circuit has often held that "conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of truth of the matter asserted." *Id.* (quoting *Drake v. Minn. Min. & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998) (citations omitted)). Where Odongo's vague and conclusory assertions are not supported by specific, concrete facts, his assertions must be disregarded. For example, Odongo asserts that Ingram's management constantly reminded employees to stay on task and some employees refused to work as instructed. (Filing No. 81-2 at

4.)  However, he cannot identify a specific employee who was instructed to do work and then refused to work.

Next, Odongo states that Ingram's "evidence is not admissible [and] contain[s] deposition errors," (Filing No. 81 at 2), in reference to Ingram's reliance on Odongo's own deposition testimony.  The Federal Rules of Civil Procedure allow a deponent to make "changes in form and substance," Fed. R. Civ. P. 30(e)(1)(B), allowing "'a party to change a deposition from what he or she said to what he or she meant[.]'" *Paul Harris Stores, Inc. v. PricewaterhouseCoopers, LLP*, No. 1:02-cv-1014-LJM-VSS, 2006 WL 2644935, at *2 (S.D. Ind. Sept. 14, 2006) (quoting *Thorn v. Sundstrand Aerospace Corp.,* 207 F.3d 383, 389 (7th Cir. 2000)).  "A change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Id.* (quoting *Thorn*, 207 F.3d at 389).  Furthermore, "[s]ummary judgment would be meaningless if litigants could manufacture genuine issues of material fact through self-serving and unsupported 'admissions' materially different from positions taken in the past.  This is why courts do not countenance the use of so-called 'sham affidavits,' which contradict prior sworn testimony, to defeat summary judgment." *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 466 (7th Cir. 2005).  Odongo is attempting to contradict his prior deposition testimony with a sham affidavit in order to defeat summary judgment.  For example, he states in his affidavit that on separate occasions he complained to Armstrong, Britt, and another supervisor, Steven Smith, about workplace harassment, (Filing No. 81-2 at 2), while in his deposition he testified that he voiced only one complaint about harassment.  This tactic is not allowed and such efforts fail to show a genuine issue of material fact.

In addition, Odongo tries to rely on allegations in his Amended Complaint, his filings with the Equal Employment Opportunity Commission ("EEOC"), and other out-of-court statements. Besides being conclusory, vague, and lacking in specific facts, these statements would be inadmissible in evidence and therefore cannot be used to defeat summary judgment. *See, e.g.*, *Aguilar v. Gaston-Camara*, 861 F.3d 626, 631 (7th Cir. 2017) (inadmissible hearsay cannot be used on summary judgment); *Lucas*, 367 F.3d at 726 (noting that "conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment" and Rule 56 "requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted"); *Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.") (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)); *Frazier v. Ind. Dep't of Labor,* No. IP01–0198–C–T/G, 2003 WL 21254424, at *4 (S.D. Ind. Mar. 17, 2003) (excluding matters from an EEOC file, including the EEOC charges and position statements).

Moreover, in his response brief, Odongo for the first time asserts a claim for intentional infliction of emotional distress. But he did not plead such a claim in his Amended Complaint, and the time for amending the pleadings has long passed. Besides, under Indiana law, a claim for intentional infliction of emotional distress requires conduct that "is extreme and outrageous: only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1264 (Ind. Ct. App. 2002) (quotation and citation omitted). Even if Odongo had properly asserted a claim for intentional infliction of emotional distress in this case, that claim would fail as a matter of law because he has not alleged or proven anything that constitutes extreme and outrageous conduct. *See, e.g., Powdertech*, 776

N.E.2d at 1264 (holding that claim of intentional infliction of emotional distress failed as a matter of law because discharging the plaintiff pursuant to a disciplinary policy does not amount to extreme and outrageous conduct).

In his response brief, Odongo also attempts to bring a "wrongful termination claim". However, he asserted no such claim in his Amended Complaint, and the pleadings are now closed. It is too late to bring it now. Moreover, a "wrongful termination" claim is a state law theory, and "Indiana ascribes to the doctrine of employment-at-will, meaning that generally "employment may be terminated by either party at will, with or without a reason." *Hollowell v. Postle Extrusion*, No. 3:17CV207-PPS/MGG, 2017 WL 2876316, at *4 (N.D. Ind. July 6, 2017). Odongo has not offered evidence to show that he satisfies any of the recognized exceptions to the employment-at-will doctrine, for example, that he had a contract of employment for a specific period of time that was terminated improperly. *See id.* Therefore, had Odongo alleged a wrongful termination claim, Ingram would be granted summary judgment on that claim.

## D.    Hostile Work Environment

Ingram moves for summary judgment on Odongo's hostile work environment claims. In order for Odongo to establish a hostile work environment claim under Title VII or § 1981, which are evaluated in the same manner, *Arnold v. VisionTek Prods., LLC*, No. 13-cv-00613, 2017 WL 3023745, at *8 (N.D. Ill. Sept. 17, 2017), *appeal filed*, No. 17-2647, (7th Cir. Aug. 14, 2017), he must show that (1) he was subject to unwelcome harassment; (2) the harassment was based on his race or national origin; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of his work environment by creating a hostile or abusive work environment; and (4) there is a basis for employer liability. *Zayas v. Rockford Mem'l Hosp.,* 740 F.3d 1154, 1159 (7th Cir. 2014). Ingram contends that Odongo cannot prove that he was subjected to harassment based

on his race or national origin, and he cannot show that the alleged harassment was sufficiently severe or pervasive.

Odongo has designated no evidence to raise a reasonable inference that the alleged harassment was based on his race or national origin. None of the alleged harassment appears related to race or national origin, and Odongo does not explain how matters such as lights turning off and on or noxious fumes are based on his race or national origin. None of the alleged harassment involves statements about, or language connected to, Odongo's race or national origin. For example, the record does not suggest that Odongo's non-working scan gun was racially motivated. Nor does the evidence suggest that Odongo was singled out for the alleged harassment. In fact, the evidence suggests the opposite: for example, Odongo himself testified that other employees were also subjected to excessive noise from the forklift drivers. Even if any of the conduct about which Odongo complains was considered harassment, the record does not raise a reasonable inference that the conduct was based on his race or national origin. Therefore, Ingram is entitled to summary judgment on Odongo's hostile work environment claim. *See, e.g.*, *Arnold*, 2017 WL 3023745, at *10 (granting summary judgment to employer where plaintiff had no evidence to indicate the alleged harassment was based on his race).

In addition, even if Odongo could raise an inference that the alleged harassment was based on his race or national origin, the record fails to raise a triable issue as to whether the challenged conduct was sufficiently severe or pervasive so as to alter the conditions of Odongo's work environment and created a hostile or abusive work environment. "'To create a hostile work environment, the conduct at issue must ha[ve] the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.'" *Kovalevska v. Burlington Coat Factory of Ind., LLC*, 4:16-cv-00203-TWP-TAB,

2018 WL 3036423, at *5 (S.D. Ind. June 6, 2018) (quoting Filipovic v. K & R Exp. Sys., Inc., 176 F.3d 390, 397 (7th Cir. 1999)).  "Title VII affords employees protection "against conduct which is sufficiently severe or pervasive that a reasonable person would find it hostile and which the victim himself subjectively sees as abusive."  *Id.* (quoting *Filipovic*, 176 F.3d at 398).  In *Filipovic*, the Seventh Circuit held that four national origin-related comments were insufficient to constitute a hostile work environment claim.  176 F.3d at 398.  And in *Kovalevska*, this Court held that two isolated national-origin related comments did not meet the sufficiently severe and pervasive standard.  2018 WL 3036423, at *5.  This is an additional reason why summary judgment should be granted to Ingram on Odongo's hostile work environment claim.

Odongo cites *Montgomery v. American Airlines, Inc.*, 626 F.3d 382 (7th Cir. 2010), as support for his hostile work environment claim.  But there, the Seventh Circuit affirmed the grant of summary judgment for the employer because the plaintiff had an insufficient factual basis to hold the employer liable for the hostile work environment.  *Id.* at 392–93.  Odongo stumbles on this point as well since he admits in his deposition that he only made one complaint about harassment to a supervisor at Ingram.  He had been instructed in orientation that if he experienced any harassment, he should report it to the supervisors and managers at Ingram or to the Elwood agents at Ingram.  In addition, Ingram had policies against discrimination and harassment.

Therefore, Ingram should be granted summary judgment on Odongo's hostile work environment claim.

**E.      Discrimination**

Ingram argues that Odongo has no evidence to prove race or national origin discrimination under the direct method. Ingram also argues that Odongo cannot establish a *prima facie* case of race or national origin discrimination. More specifically, Ingram contends that Odongo cannot show that he was meeting legitimate employment expectations or that similarly situated employees outside the protected class were treated more favorably than he was treated.

Ingram is correct that Odongo has presented no direct evidence that Ingram subjected him to an adverse employment action based on unlawful discrimination. *See Andrews*, 743 F.3d at 234. Therefore, the Court proceeds to analyze whether Odongo has enough evidence to raise a triable fact as to his *prima facie* case of discrimination. It is undisputed that Odongo is a member of a protected class and that he suffered an adverse employment action, namely, the termination of his employment. But Odongo runs into trouble with the other elements of his *prima facie* case.

First, Odongo has no evidence that he was meeting his employer's legitimate performance expectations. Factfinders may consider an employee's insubordination in determining whether the employee was meeting the employer's legitimate expectations. *See, e.g.*, *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014) (affirming summary judgment on grounds that employee was not meeting employer's legitimate expectations where employee refused to follow written warnings not to write unprofessional emails); *Everroad v. Scott Truck Sys., Inc.,* 604 F.3d 471, 478 (7th Cir. 2010) (holding that employee failed to meet her employer's legitimate expectations because she admitted that she was insubordinate and insubordination is a nondiscriminatory reason for termination).

In May 2015, a supervisor instructed Odongo to take a break, but he refused to do so. Odongo admitted that he was insubordinate by his refusal and for exchanging "words" with the

supervisor. When that supervisor requested assistance from Odongo's supervisor Armstrong, Odongo refused to listen to her as well. It is undisputed that Odongo was terminated because of this insubordination. Odongo has admitted that this insubordinate conduct was deserving of disciplinary action—he simply disputes that termination was warranted.[1] This Court "does not sit as a 'super-personnel department,' second-guessing an employer's 'business decision as to whether someone should be fired or disciplined…'". *Coleman v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012) (quoting *Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 697 (7th Cir. 2006)).

In addition, Odongo has insufficient evidence to suggest that a similarly-situated employee was treated more favorably than he was. The best he can muster is his conclusory assertion that other employees failed to stay on task and some refused "to work as told." (Filing 81 at 2.) Odongo does not identify any such employee; nor does he cite to any specific instances in which this occurred, and so his conclusory statements are insufficient to defeat summary judgment. *See Lucas*, 367 F.3d at 726 (noting that Rule 56 "requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted") (quotation omitted).

Therefore, Odongo's evidence fails to raise a reasonable inference that his performance was meeting Ingram's legitimate job expectations or that any similarly situated employee outside the protected class was treated more favorably than he was. As a result, he cannot make out a *prima facie* case of discrimination.

Moreover, since Ingram has proffered a legitimate, nondiscriminatory reason for terminating Odongo's employment, in order to survive summary judgment, Odongo must produce

---

[1] Odongo does not, however, have any evidence to suggest that the termination of his employment was contrary to any written policy. In fact, he concedes that Ingram "could [have] terminate[d] Odongo's job for insubordination". (Filing No. 81 at 2.) He argues that the termination was pretextual because other employees were constantly reminded to stay on task while working, and he complained to Britt that employees refused to work, but Ingram didn't discipline any of them. (Filing No. 81 at 2.) For support, Odongo cites his affidavit, but his affidavit fails to cite specific instances in which this occurred, and therefore, this conclusory allegation fails to raise a triable issue. *See, e.g.*, *Lucas*, 367 F.3d at 726 & n.9.

evidence to raise an inference that Ingram's stated reason is a pretext for discrimination. A plaintiff may show pretext by demonstrating that: "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the [adverse action]; or (3) the proffered reasons were insufficient to motivate the [adverse action]." *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999). A "pretext" is "a lie or a phony reason for an employment decision." *Id.* "An honest mistake, however dumb, is not [pretext], and if there is no doubt that it is the real reason[,] it blocks the case at the summary-judgment stage." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006) (citations omitted). Odongo has no evidence to allow a factfinder to infer that Ingram's reason for terminating his employment (his insubordination) is factually baseless, that it was not the real motivation for his termination, or that it was an insufficient reason to motivate his termination. Therefore, Odongo cannot show pretext.

Odongo relies on *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025 (7th Cir. 1998), as support for his discrimination claims, but the case provides him no assistance. In that case, the Seventh Circuit affirmed the grant of summary judgment for the employer on a Title VII race discrimination claim on the basis that the plaintiff had no evidence that employees outside the protected class were treated more favorably than she. *Id.* at 1032–33. The plaintiff failed to identify a similarly situated employee, did not provide specific support for her allegations of discrimination, made only a conclusory assertion that the evidence demonstrated racial bias, and failed to offer evidence of pretext. *Id.* Like the plaintiff in *Gonzalez*, Odongo has not provided "specific support" for his allegations that similarly situated employees outside the protected class were treated more favorably than he was.

In his response brief, Odongo attempts to bring a "wrongful termination" claim. No such claim was pleaded in his Amended Complaint, however, and the pleadings are now closed; it is

too late to bring it now.  Moreover, a "wrongful termination" claim is a state law theory, and "Indiana ascribes to the doctrine of employment-at-will, meaning that generally "employment may be terminated by either party at will, with or without a reason." *Hollowell v. Postle Extrusion*, No. 3:17CV207-PPS/MGG, 2017 WL 2876316, at *4 (N.D. Ind. July 6, 2017).  Odongo has not offered evidence to show that he satisfies any of the recognized exceptions to the employment-at-will doctrine, for example, that he had a contract of employment for a specific period of time that was terminated improperly.  *See id*.  Therefore, Ingram is entitled to summary judgment on the race and national origin discrimination claims.

## F.    Retaliation

Ingram argues that Odongo cannot establish a *prima facie* case of retaliation, asserting that he fails to prove three of the four elements of his *prima facie* case.[2]  As noted in discussing Odongo's discrimination claims, the evidence fails to create a triable issue of fact as to whether he was meeting Ingram's legitimate expectations.  Rather, the unrefuted evidence establishes that he was not: Odongo was insubordinate.  Furthermore, Odongo has wholly failed to produce any evidence that he was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity.  In fact, he has not identified a single employee who engaged in statutorily protected activity; nor has he identified one who was treated better than he was after having engaged in such activity.  Therefore, Odongo cannot establish at least two elements of his

---

[2] Ingram has not directly challenged Odongo's ability to prove his retaliation claims under the direct method of proof. However, the Court notes that Ingram has argued that Odongo did not engage in statutorily protected activity, and engaging in such activity is necessary to establish retaliation under the direct method of proof.  If Odongo cannot raise a triable issue as to whether he engaged in statutorily protected activity, his retaliation claims cannot survive summary judgment using either the direct or the indirect method of proof.  In addition, Ingram maintains that Odongo's sole complaint about harassment was lodged six months before his termination.  (Filing No. 69 at 22.)  This timing fails to raise a reasonable inference of a causal connection between Odongo's complaint and his termination. *See Longstreet v. Ill. Dep't of Corrections*, 276 F.3d 379, 384 (7th Cir. 2002) (holding 4-month temporal connection between protected activity and adverse action "is insufficient" to establish a causal connection), yet another reason why summary judgment for Ingram would be appropriate on the retaliation claims.

*prima facie* case of retaliation.  And the evidence is insufficient to establish yet another element

of the *prima facie* case—that Odongo engaged in statutorily protected activity.  The only time

Odongo complained about harassment was to Armstrong in December 2014.  (Filing No. 70-3 at

14.)  More specifically, he "reported the one incident where [an] employee was using his tape

machine to, like, to make noise with me, and looking at me and laughing while he imitates me . . .

. [t]hen the other harassment was staring . . . . [and] the stalking activities."  (Filing No. 70-3 at

13.)  Odongo's deposition testimony was clear: during his employment at Ingram, this complaint

to Armstrong was his only complaint about harassment or discrimination; he did not complain to

anyone else at Ingram, or at any other time, about harassment or discrimination.  (Filing No. 70-3

at 14.)  The Seventh Circuit has recently explained:

> [A] retaliation claim isn't doomed simply because the complained-of conduct was
> not in fact an unlawful employment practice; rather, the plaintiff must have a
> sincere and *reasonable* belief that he is opposing an unlawful practice. The
> objective reasonableness of the plaintiff's belief is not assessed by examining
> whether the conduct was persistent or severe enough to be unlawful, but merely
> whether it falls into the category of conduct prohibited by the statute. That
> determination requires us to ask whether the complained-of conduct entailed a
> motive that Title VII prohibits.

*Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (quotations and internal

citations omitted) (emphasis added), *cert. denied*, 137 S. Ct. 1115 (Feb. 21, 2017).

Odongo has presented no evidence from which a reasonable factfinder could infer that any

of the harassment that he allegedly experienced was because of his race or national origin.  And

"[w]ithout evidence of a prohibited motive," Odongo's belief that he was complaining about

harassment based on his race or national origin, even if sincere, "was objectively unreasonable."

*Id.*  Odongo relies on *Holland v. Jefferson National Life Insurance Co.*, 883 F.2d 1307 (7th Cir.

1989), but there, unlike here, the plaintiff had evidence to show that she had a reasonable and

sincere belief that she was opposing an unlawful practice.  *Id.* at 1315.  Here, in contrast, the record

contains no evidence that Odongo engaged in protected activity, and his retaliation claims fail to survive summary judgment.[3]

But even if Odongo could demonstrate a *prima facie* case of retaliation, his claims could not survive summary judgment. Ingram has offered a legitimate reason for terminating Odongo's employment: his insubordination. Even Odongo admits that he was insubordinate; he simply disputes that the termination of his employment was warranted. And, as discussed above in connection with the discrimination claims, Odongo's evidence has not created a triable issue as to pretext. Therefore, summary judgment is **granted** on the retaliation claim.

## G. State Law Claims for Invasion of Privacy and Fraud

Finally, Odongo brings supplemental state law claims for invasion of privacy and fraud. Generally, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.,* 672 F.3d 476, 479 (7th Cir. 2012) (citation omitted). Exceptions to the presumption exist, including when the statute of limitations has run on a claim or where correct resolution of the state law claims is "absolutely clear." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009). If an exception applies, the court may exercise its discretion to decide the state law claims. *Id.* Because the two-year statute of limitations has run on Odongo's invasion of privacy claim, *see* Ind. Code § 34–11–2–4 ("An action for ... injury to person ... must be commenced within two (2) years after the cause of action accrues"); *Johnson v. Blackwell*, 885 N.E.2d 25, 30 (Ind. Ct. App. 2008) (applying 34-11-2-4 to an invasion of privacy by intrusion claim), and the resolution of the fraud claim is clear, the Court in its discretion decides these claims.

---

[3]  This conclusion defeats any effort to establish retaliation under the direct method of proof as well.

Under Indiana law, the tort of invasion of privacy has four strands: "(1) unreasonable intrusion upon the seclusion of another, (2) appropriation of the other's name or likeness, (3) public disclosure of private facts, and (4) false light publicity." *Ducker v. Amin*, No. 1:12-cv-01596-SEB, 2014 WL 1018050, at *9 (S.D. Ind. Mar. 14, 2014). Odongo's invasion of privacy claim is based on alleged surveillance at Ingram. Thus, he claims invasion of privacy by intrusion. To prevail on such a claim, he must be able to show "that there was an intrusion upon [his] physical solitude or seclusion as by invading his home or conducting an illegal search.'" *Williams v. Gene B. Glick Co.*, No. 1:09-CV-01113-TWP, 2012 WL 2458604, at *4 (S.D. Ind. June 27, 2012), *aff'd* (Jan. 24, 2013). Odongo's invasion of privacy claim is based on alleged surveillance by Ingram at his place of employment. He does not allege an invasion of his home or that he was subjected to an illegal search.

As for Odongo's fraud claim, "[f]or fraud to exist, there must be a material misrepresentation of past or existing fact." *Holland v. Ind. Farm Bureau Ins.*, Case No. 18A-PL-792, 2018 WL 4275369, at *5 (Ind. Ct. App. Aug. 28, 2018) (citing *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013)). "Indiana law is well-settled that actual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions or statements of existing intent which are not executed." *Lycan v. Walters*, 904 F. Supp. 884, 897 (S.D. Ind. 1995). In his deposition, Odongo testified that the only basis for his fraud claim was the representation from Ingram that he would be working in a workplace free from harassment, discrimination, and unlawful activity. (Filing No. 70-3 at 20.) This alleged representation was in regard to a future conduct, not a past or existing fact. Consequently, the fraud claim fails. Therefore, Ingram is entitled to summary judgment on the supplemental state law claims for invasion of privacy and fraud.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Filing No. 68) is

**GRANTED**.  Final judgment will be issued under separate order.

   **SO ORDERED.**

Date:  9/21/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Peter Odongo
P.O. Box 42502
Indianapolis, Indiana  46242

Erin Thornton Escoffery
TAFT STETTINIUS & HOLLISTER LLP
eescoffery@taftlaw.com

Thomas Ransel Devoe
TAFT STETTINIUS & HOLLISTER LLP
tdevoe@taftlaw.com

Michael C. Terrell
TAFT STETTINIUS & HOLLISTER LLP
mterrell@taftlaw.com

Shelley Rebecca McCoy
JACKSON LEWIS PC
shelley.mccoy@jacksonlewis.com

Brian L. McDermott
JACKSON LEWIS PC
brian.mcdermott@jacksonlewis.com

Steven F. Pockrass
OGLETREE, DEAKINS, NASH, SMOAK & STEWART PC
steven.pockrass@ogletreedeakins.com

Christopher S. Wolcott
WOLCOTT LAW FIRM LLC
indy2buck@hotmail.com